UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| 23ANDME, INC., | ) | Case No. 5:15-CV-01323-PSG |
| Petitioner, | ) ) ) | **ORDER DENYING PETITION TO VACATE ARBITRATION AWARD** |
| v. | ) ) | **(Re: Docket No. 6)** |
| KAREN DAVIS-HUDSON AND SARAH DIAZ, | ) ) ) | |
| Respondents. | ) ) | |

This petition involves three parties, two arbitration awards, and one question: does the arbitration clause in Petitioner 23andMe, Inc.'s terms of service authorize class arbitration? Respondents Karen Davis-Hudson and Sarah Diaz say yes, backed up by an arbitration award in their favor, while 23andMe says no and petitions to vacate. Because the court finds that the arbitrator interpreted the terms of the parties' contract, as required by *Oxford Health Plans LLC v. Sutter*,[1] 23andMe's petition to vacate is DENIED.

---

[1] 133 S. Ct. 2064, 2068 (2013).

1

Case No. 5:15-CV-01323-PSG
ORDER DENYING PETITION TO VACATE ARBITRATION AWARD

**I.**

23andMe is a genetic testing company that offers a Personal Genome Service, which provides customers information about their genetic data.[2] Customers purchase the PGS on 23andMe's website, subject to 23andMe's terms of service.[3] Deep in the terms of service lies Paragraph 28, "Miscellaneous," which states that customers' disputes with 23andMe are subject to final and binding arbitration before the American Arbitration Association.[4] The arbitration clause reads:

> Applicable law and arbitration. Except for any disputes relating to intellectual property rights, obligations, or any infringement claims, any disputes with 23andMe arising out of or relating to the Agreements ("Disputes") shall be governed by California law regardless of your country of origin or where you access 23andMe, and notwithstanding of any conflicts of law principles and the United Nations Convention for the International Sale of Goods. Any Disputes shall be resolved by final and binding arbitration under the rules and auspices of the American Arbitration Association, to be held in San Francisco, California, in English, with a written decision stating legal reasoning issued by the arbitrator(s) at either party's request, and with arbitration costs and reasonable documented attorneys' costs of both parties to be borne by the party that ultimately loses. Either party may obtain injunctive relief (preliminary or permanent) and orders to compel arbitration or enforce arbitral awards in any court of competent jurisdiction.[5]

Late in 2013, the Food and Drug Administration issued a letter directing 23andMe to stop marketing certain health information aspects of the PGS.[6] Shortly afterward, many aspiring class plaintiffs sued in federal court, alleging a variety of claims related to false advertising, unfair competition, and consumer protection.[7] The cases were consolidated before Judge Koh, and the

---

[2] *See* Docket No. 6 at 4.

[3] *See id.*

[4] *See id.*

[5] Docket No. 2-2 at ¶ 28(b).

[6] *See* Docket No. 6 at 5.

[7] *See Tompkins v. 23andMe, Inc.*, Case No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014); *Stanton v. 23andMe, Inc.*, Case No. 5:13-cv-05682-LHK (N.D. Cal. June 25, 2014); *Martin et al v. 23 Andme, Inc*, Case No. 5:14-cv-00429-LHK (N.D. Cal. June 25, 2014); *Aeron v. 23andMe, Inc. et al*, Case No. 5:14-cv-01167-LHK (N.D. Cal. June 25, 2014); *Dilger v. 23andMe, Inc.*, Case No. 5:14-cv-01191-LHK (N.D. Cal. June 25, 2014); *Guthrie v. 23andMe,*

court issued an order holding that the arbitration clause was valid and enforceable and dismissing the cases.[8]

Meanwhile, would-be class plaintiffs also were filing class action complaints and demands for class arbitration with the American Arbitration Association.[9] Mason Livingston and Vladimir Druskin filed a class action complaint, as did Respondents.[10] Livingston and Druskin's case proceeded to arbitration first, on the issue of whether the arbitration clause authorized class arbitration against 23andMe.[11] The arbitrator issued an award ("First Award") finding that the arbitration clause does not allow class arbitration.[12] Livingston and Druskin petitioned the San Francisco County Superior Court to vacate the First Award and determine anew whether class arbitration was available.[13] The Superior Court denied the request, finding that the parties had voluntarily submitted the issue of class arbitration to the arbitrator.[14]

After the First Award was issued, Respondents requested arbitration of the same issue: whether the arbitration clause authorized class arbitration of claims against 23andMe.[15] But in contrast to the first arbitrator, the second arbitrator held that the clause does authorize class

---

*Inc.*, Case No. 5:14-cv-01258-LHK (N.D. Cal. June 25, 2014); *Spreter v. 23andMe, Inc.*, Case No. 5:14-cv-01455-LHK (N.D. Cal. June 25, 2014); *Newland v. 23andMe, Inc. et al*, Case No. 5:14-cv-01348-LHK (N.D. Cal. June 25, 2014); *Stefani et al v. 23andMe, Inc.*, Case No. 5:14-cv-02414-LHK (N.D. Cal. June 25, 2014).

[8] *See, e.g.*, *Tompkins v. 23andMe, Inc.*, Case No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014).

[9] *See* Docket No. 6 at 5.

[10] *See id.*

[11] *See id.* at

[12] Docket No. 2-8 at 8.

[13] *See* Docket No. 18-1 at 2.

[14] *See id.*

[15] *See* Docket No. 6 at 7.

3
Case No. 5:15-CV-01323-PSG
ORDER DENYING PETITION TO VACATE ARBITRATION AWARD

arbitration ("Second Award").[16]  23andMe filed a motion for reconsideration of the Second Award, which the arbitrator denied.[17]

Finally, yet another prospective class plaintiff, Joseph Jewell, filed an action for declaratory relief against 23andMe in San Francisco Superior Court, arguing that the availability of class arbitration under 23andMe's arbitration clause was a gateway question to be determined by a court.[18]  The Superior Court held that the Federal Arbitration Act governs whether class arbitration may be compelled, and that the "use of the words 'you,' 'your,' and 'either party' in the arbitration agreement establishes that the contract is bilateral and does not provide for class arbitration."[19]

Given the conflicting nature of the First and Second Awards, 23andMe petitioned this court to vacate the Second Award.[20]  23andMe argues that because two mutually exclusive arbitration awards exist, the court has the authority to determine which award more closely conforms to the parties' intent and vacate the other.[21]  23andMe also argues that the Second Award violates the FAA[22] and that it is completely irrational and manifestly disregards controlling precedent on interpretation of arbitration clauses.[23]  Finally, 23andMe points to the *Jewell* decision and suggests that the court defer to that holding.[24]

---

[16] *See* Docket No. 2-1 at 8-13.

[17] *See* Docket No. 6 at 7.

[18] *See* Docket No. 3-6 at ¶¶ 4, 5, 17.

[19] Docket No. 34-1, *Jewell v. 23andMe, Inc.*, Case No. CGC-15-544119 at 2 (San Francisco Super. Ct. June 24, 2015).

[20] *See* Docket No. 6.

[21] *See id.* at 14-15.

[22] *See id.* at 10-15.

[23] *See id.* at 16-25.

[24] *See id.* at 16.

## II.

The court has jurisdiction under 28 U.S.C. § 1332.[25]  The parties consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[26]

## III.

Section 10(a)(4) of the FAA allows a district court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[27]  The court's Section 10(a)(4) power is limited to preserve the "arbitration's essential virtue of resolving disputes straightaway,"[28] however, and so courts may vacate an arbitration award "only in very unusual circumstances."[29]  The petitioner "bears a heavy burden"[30] and must show that the arbitrator "acted outside the scope of his contractually delegated authority"[31] by issuing an award that does not "draw its essence from the contract."[32]  "[A]n arbitral decision 'even arguably construing or

---

[25] *See Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1055 n.3 (9th Cir. 2013) ("Although the FAA 'provides a means of judicial enforcement where a controversy has been arbitrated pursuant to a valid arbitration provision and the arbitrator has made an award,' it does not 'confer jurisdiction on federal district courts over actions to . . . vacate arbitration awards, nor does it create a federal cause of action giving rise to federal question jurisdiction under 28 U.S.C. § 1331.' Rather, there must be 'some other independent basis for federal jurisdiction' in an FAA case, such as diversity jurisdiction.") (quoting *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 918 (9th Cir. 2009); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)).

[26] *See* Docket Nos. 10, 14.

[27] 9 U.S.C. § 10(a)(4).

[28] *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008).

[29] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

[30] *Oxford*, 133 S. Ct. at 2068.

[31] *Eastern Associated Coal Corp.*, 531 U.S. 57, 57 (2000).

[32] *Id.* (quoting *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

5
Case No. 5:15-CV-01323-PSG
ORDER DENYING PETITION TO VACATE ARBITRATION AWARD

applying the contract' must stand, regardless of a court's view of its (de)merits,'"[33] and the "sole question for [the court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."[34]

The Supreme Court has not addressed whether the availability of class arbitration is a threshold question to be determined by a court rather than an arbitrator.[35] In *Oxford*, the parties agreed that the arbitrator should determine whether the arbitration agreement authorized class procedures, preventing the Court from reaching that issue.[36] The Court of Appeal for California's Fourth District, however, has acted on the Court's coy hints in *Oxford* and *Stolt-Nielsen*[37] and held in *Garden Fresh Restaurant Corp. v. Superior Court* that whether parties have agreed to arbitrate representative claims is a gateway question for a court, not an arbitrator, if the arbitration agreement is silent on the matter.[38]

### IV.

Applying the standards as set forth above, the petition to vacate fails.

***First***, 23andMe voluntarily submitted to the second arbitrator's authority to decide the issue of whether the arbitration clause authorizes class arbitration.[39] This also was the case in *Oxford*, and as in *Oxford*, the only issue now left is whether the arbitrator interpreted the contract.[40]

---

[33] *See id.* (quoting *Eastern Associated Coal Corp.*, 531 U.S. at 62).

[34] *Oxford*, 133 S. Ct. at 2068.

[35] *See Oxford*, 133 S. Ct. at 2068 n.2.

[36] *See id.*; *see also id.* at 2071 ("Oxford agreed with Sutter that an arbitrator should determine what their contract meant, including whether its terms approved class arbitration. . . . Oxford does not get to rerun the matter in a court.").

[37] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 680 (2010).

[38] 231 Cal. App. 4th 678, 684 (2014).

[39] *See* Docket No. 2-1 at 6.

[40] *See* 133 S. Ct. at 2067-68.

***Second***, the second arbitrator clearly interpreted the arbitration clause in 23andMe's terms of service.  The Second Award focused on the absence of bilateral words such as "I," "me" and "my" in the arbitration clause to determine that the clause's language did not indicate an intent to create a bilateral agreement between two parties, but rather authorized multilateral class arbitration.[41]  The second arbitrator analyzed the capitalization of the words "Agreement" and "agreement" and found that the capitalized term "Agreement" referred to an "Agreement applicable to all of 23andMe's customers" and the lowercase term "agreement" referred to an "'agreement' between a particular individual and 23andMe."[42]  The second arbitrator also discussed the arbitration clause's use of the plural terms "users" and "arbitral awards," finding that the plural terms refer to "more than one arbitration award and therefore more than one party."[43]  Given the arbitrator's close reading of the arbitration clause, it is indisputable that he interpreted it.  Whatever doubts the court may harbor about this interpretation, under *Oxford*, the court's inquiry must end there.

23andMe argues that the court should follow *Connecticut Light & Power Company v. Local 420, International Brotherhood of Electrical Workers, AFL-CIO*, which held that "[w]here inconsistent awards have been made," the court should first determine whether each award "draws its essence from the contract," and if necessary, then determine "which decision conforms most closely" to the parties' intent.[44]  This is essentially a request to disregard the rule lately established by *Oxford*, and so the court declines.

23andMe also argues that the second arbitrator's interpretation of the arbitration clause violates the purposes, policies and requirements of the FAA,[45] is completely irrational and

---

[41] Docket No. 2-1 at 8-9.

[42] *Id.* at 10.

[43] *Id.* at 13.

[44] 718 F.2d 14, 21 (2d Cir. 1983).

[45] *See* Docket No. 6 at 10-13.

disregards controlling law.[46] Be that as it may, the court's inquiry must end upon finding that the second arbitrator interpreted the arbitration clause. The Supreme Court left no loopholes allowing judicial *vacatur* where an arbitrator construed the arbitration agreement. "A court may not correct [the arbitrator's] mistakes under § 10(a)(4) . . . [t]he potential for those mistakes is the price of agreeing to arbitration."[47]

*Third*, the court declines 23andMe's request to defer to the San Francisco Superior Court's ruling in *Jewell*. 23andMe provides no basis for their request, and this case and *Jewell* are differently situated. In *Jewell*, the parties submitted the availability of class arbitration to the Superior Court for judicial determination in the first instance. Here, the parties submitted the issue to arbitration, and as the Second Award notes, "[n]o party in this arbitration has objected to this Tribunal's jurisdiction to determine whether this matter may proceed on behalf of a class."[48]

The Superior Court resolved a similar argument when confirming the *Livingston* award.[49] In that case, the plaintiffs requested that the Superior Court vacate the award under *Garden Fresh*.[50] The Superior Court held that when parties have "voluntarily submitted the issue [of class arbitration] to the arbitrator," *Garden Fresh* does not apply, and that "there is no authority that *Garden Fresh* can be retroactively applied."[51] Because the parties here voluntarily submitted the availability of class arbitration to the second arbitrator's authority, the court declines to follow the holding in *Jewell*.

**IV.**

---

[46] *See id.* at 16-25.

[47] *Oxford*, 133 S. Ct. at 2070.

[48] Docket No. 2-1 at 6.

[49] *See* Docket No. 18-1, *Livingston et al v. 23andMe, Inc.*, Case No. CPF-14-513943 at 3 (San Francisco Super Ct. Jan. 14, 2015).

[50] *See id.* at 2.

[51] *Id.* at 3.

It is undisputed that 23andMe drafted the arbitration clause[52] and fought vigorously (and successfully) to require that consumer disputes about the PGS proceed through arbitration.[53] 23andMe submitted to the arbitrator's authority in *Livingston*, when the arbitrator found in its favor. 23andMe was content to enter arbitration again with Respondents, at least until the arbitrator found against them. *Oxford* holds that, having required arbitration against Respondents, 23andMe are stuck with the result, so long as it is grounded in an interpretation of the agreement, just as the *Livingston* plaintiffs were stuck with their result. 23andMe's petition to vacate the Second Award is DENIED.

**SO ORDERED.**

Dated: October 16, 2015

*[signature]*
PAUL S. GREWAL
United States Magistrate Judge

---

[52] *See* Docket No. 6 at 7.

[53] *See, e.g.*, *Tompkins v. 23andMe, Inc.*, Case No. 5:13-CV-05682-LHK, Docket No. 69 (N.D. Cal. Apr. 28, 2014) (moving to compel arbitration).